**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION**

**RORY THOMAS LEE**                                                          **PLAINTIFF**

**V.**                                                    **CAUSE NO. 3:10-CV-00392-CWR-LRA**

**NATIONAL RAILROAD PASSENGER CORPORATION;
ILLINOIS CENTRAL RAILROAD COMPANY;**                    **DEFENDANTS**
**AND BFI WASTE SERVICES LLC**

<u>**ORDER DENYING SUMMARY JUDGMENT**</u>

 The above-styled matter is before the Court on the defendants' motions for summary

judgment. Having reviewed each of the parties' briefs, the exhibits submitted therewith, and all

available authority governing the questions presented, the Court concludes that the motions

should be denied.

**FACTS**

 Rory Thomas Lee was an employee of the National Railroad Passenger Corporation

(hereinafter "Amtrak") on October 19, 2009, when the train on which he worked as a conductor

collided with a 2002 Nissan Altima carrying four minors. At the time of the crash, Lee was

riding in the crew car, which was the second car on the train. Exhibit A to Amtrak and Illinois

Central's Motion for Summary Judgment [Docket No. 65-1] at 14 (Lee Deposition at 144). Lee

did not see the crash occur, Lee Depo. at 168-69, but "when [he] heard the emergency brakes

going to emergency, then [he] knew – [he] knew something was – could be happening." Lee

Depo. at 170. Lee "could hear the glass flying" and "knew it was bad," Lee Depo. at 170, but he

did not suffer any physical injuries in the crash. Lee Depo. at 173.

 Immediately after the train came to rest, his "engineer told [him] to get back" to the scene

of the crash to investigate.[1] Lee Depo. at 176. Lee exited the train and "almost run [*sic*] back to the . . . accident site," where he was the first person to arrive. Lee Depo. at 180. He covered a distance of roughly one-half mile from his train to the crash site. Lee Depo. at 177. When he arrived, Lee "saw all this mess, and all this danger of the – there was power lines were down, there's fumes, and I just felt like my life was in danger and near death." Lee Depo. at 180. Lee "saw smoke," Lee Depo. at 271, and could smell "gas fumes" and "just felt like [he] was near death because . . . at any moment it could explode." Lee Depo. at 181.

Lee conducted a search of the area and discovered the dead bodies of the car's passengers, three of whom were killed and all of whom had been ejected during the crash. Lee Depo. at 181. One of the decedents was a 2-year-old girl. Defendants Amtrak and Illinois Central's Memorandum in Support of Motion for Summary Judgment [Docket No. 66] (hereinafter "Def. Second Memo") at 3. The activity of investigating required Lee to "step over" the power lines, as "[t]hey were all around" him and "all around the car[ ]." Lee Depo. at 182-83. No explosion occurred, although Lee testified that he "was expecting it." Lee Depo. at 183.

Lee immediately showed signs of emotional distress, which he attributed to seeing the victims' bodies "[a]nd the fear of near death, being around the power lines and the diesel fuel." Lee Depo. at 182-83. He could not complete paperwork for his employer in connection with the crash because he "was so upset . . . ." Lee Depo. at 174. Lee called his dispatch office and reported that he "was in a bad crossing accident with dead children and [that he] wanted to be relieved immediately" because he "was in no shape to do [his] job and carry on." Lee Depo. at

---

[1] Lee testified that, as the train's conductor, the responsibility to review the scene of the crash rested with him. Lee Depo. at 179.

189.

Lee began seeing a counselor the day after the accident, Lee Depo. at 203, and in time, at least one counselor observed that "[t]he death of the toddler seems to be at the root of the trauma." Lee Depo. at 167. That physician memorialized Lee's complaints that he was suffering from "anxiety, depression, pain, difficulty catching his breath, flashbacks, chest pain, trouble relaxing, confusion, fears and phobia associated with the accident." Plaintiff's Memorandum in Opposition to Amtrak and Illinois Central's Motion for Summary Judgment [Docket No. 79] (hereinafter "Pl. First Memo") at 6 (citing Records of Kristie E. Cato [Docket No. 65-4] at 6). Another doctor recalled that Lee "report[ed] trauma mainly focuse[d] on dead baby he found after the train accident." Lee Depo. at 158.

Ultimately, Lee was diagnosed with Posttraumatic Stress Disorder.[2] Cato Records at 10. According to Lee, "[t]o date, [he] experiences nightmares, flashbacks, anxiety attacks, anger attacks, memory loss, concentration problems, heart palpitations, sleep and appetite disturbances, and confusion due to the . . . accident." Pl. First Memo at 7 (citing Affidavit of Maria Klette-Ketchum [Docket No. 79-1] at 1).

Lee eventually brought suit against Amtrak, Illinois Central Railroad Company (hereinafter "Illinois Central"), and BFI Waste Services, LLC (hereinafter "BFI"). Lee sued Amtrak under the Federal Employers' Liability Act for negligence resulting in, among other

---

[2] According to Lee's health care providers, "The essential feature of Posttraumatic Stress Disorder is the development of characteristic symptoms following exposure to an extreme traumatic stressor involving direct personal experience of an event that *involves actual or threatened death or serious injury,* or a threat to the physical integrity of self or others." Pl. First Memo at 7 (emphasis included).

things, emotional distress.[3] Lee sued Illinois Central and BFI for negligence under state law "to recover damages for his emotional distress . . . ."[4] Pl. First Memo at 18; Plaintiff's Memorandum in Opposition to BFI's Motion for Summary Judgment [Docket No. 80] (hereinafter "Pl. Second Memo") at 7. On February 7, 2011, BFI moved for summary judgment [Docket No. 63] on its own behalf, and Amtrak and Illinois Central jointly filed a Motion for Summary Judgment [Docket No. 65].

## STANDARD OF REVIEW

Although motions for summary judgment are filed frequently, not every case is suitable for such disposition.  Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must support that contention by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," Fed. R. Civ. P. 56(c), and the Court must view that evidence in the light most favorable to the non-moving party. *Abarca v. Metro Transit Authority*, 404 F.3d 938, 940 (5th

---

[3] Specifically, after recounting the manners in which Lee alleged that Amtrak acted negligently (including by "failing to provide Plaintiff with a reasonably safe place in which to work as required by law," Complaint [Docket No. 1] at 3), Lee complained that Amtrak's negligence caused him "to sustain severe, permanent and disabling mental and emotional injuries; and that [Lee] has suffered in the past and will continue to suffer in the future pain and anguish and loss of enjoyment of life; as well as psychological injuries and that he was otherwise injured and disabled." Complaint at 4.

[4] Lee complained that "[a]s a direct and proximate result of the negligence of [Illinois Central], its agents and employees, a collision was caused to occur as set forth above, causing [Lee] to sustain severe, permanent and disabling mental and emotional injuries . . . ." Complaint at 6.

Cir. 2005).

When confronted with these motions, this Court focuses on "genuine" issues of "material" facts. An issue is genuine "if the evidence supporting its resolution in favor of the party opposing summary judgment, together with any inference in such party's favor that the evidence allows, would be sufficient to support a verdict in favor of the party." *Zisman v. Mason*, 2008 WL 879726, *3 (S.D. Miss. 2008) (citing *Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987). A fact is material if it is one that might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

When filing a motion for summary judgment, "the moving party is not required to negate the elements of the nonmoving party's case." *Lawrence v. Univ. of Texas Medical Branch at Galveston*, 163 F.3d 309, 311 (5th Cir. 1999). Moreover, the movant "need not prove a negative when it moves for summary judgment on an issue that the [respondent] must prove at trial. It need only point to an absence of proof on [the non-movant's] part." *Celotex v. Catrett*, 477 U.S. 317, 324 (1986).

Once the movant demonstrates that it is entitled to judgment as a matter of law, the burden shifts to the resisting party to provide reasons that summary judgment is not proper. *Id.* As the Court once explained:

> The non-movant is then obligated to present competent evidence setting forth *specific* facts to illustrate the existence of a genuine issue of material fact for trial. . . . The resisting party may not create a genuine dispute simply by alleging that a dispute exists . . . . When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth *specific* facts showing that there is a genuine issue for trial.

*Walker v. J.E. Merit Constructors, Inc.*, 707 F. Supp. 254, 257 (S.D. Miss 1988) (citations and

quotations omitted) (emphasis added).

Additionally, the Court "resolves factual controversies for purposes of summary judgment in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Zisman v. Mason*, 2008 WL 879726, *3 (S.D. Miss. 2008) (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). Where there is no proof of contradictory facts, the Court will not assume that the nonmoving party could or would prove the necessary facts. *Id.* (citing *Wallace v. Texas Tech. Univ.*, 80 F.3d 1042, 1048 (5th Cir. 1996)).

This Court is ever mindful that although a useful device, summary judgment "must be employed cautiously because it is a final adjudication on the merits." *Jackson v. Cain*, 864 F.2d 1235, 1241 (5th Cir. 1989). The jury has the responsibility to assess the probative value of the evidence. As a consequence, a court must step back and not make any credibility determinations, and it must not weigh evidence or draw from the facts legitimate inferences for the movant. *Strong v. Dept. of Army*, 414 F. Supp. 2d 625, 628 (S.D. Miss. 2005).

## ANALYSIS

Although each of the defendants in the case at bar requests the same form of ultimate relief, Amtrak's grounds are distinct because of the nature of the claim it faces. Amtrak argues that Lee has not met the "zone of danger" test necessary to state a claim for emotional distress in FELA cases. Illinois Central and BFI, on the other hand, contend that Lee cannot make out a similar claim under state law because Lee's claims against them are those of a mere bystander and that, in their view, he has not met the criteria for such a claim under Mississippi law.

Amtrak argues, and Lee agrees, that the FELA claim is governed by the Supreme Court's

6

decision in *Consolidated Rail Corporation v. Gottshall*, 512 U.S. 532 (1994). In *Gottshall*, the Supreme Court held that claims for negligent infliction of emotional distress[5] under FELA are governed by the "zone of danger" test, which "limits recovery for emotional injury to those plaintiffs who sustain a physical impact as a result of a defendant's negligent conduct, or who are placed in immediate risk of physical harm by that conduct." *Id.* at 547-48. "Under this test, a worker within the zone of danger of physical impact will be able to recover for emotional injury caused by fear of physical injury to himself, whereas the worker outside the zone will not." *Id.* at 556.

Lee has never contended that the October 2009 crash led to a physical impact actionable under FELA. With regard to Amtrak, his Complaint alleged only that his employer's actions caused him "to sustain severe, permanent, and disabling mental and emotional injuries[.]" Complaint [Docket No. 1] at 4. The question, then, is whether the evidence, when viewed in the light most favorable to Lee's case, could support a finding that Amtrak's conduct placed Lee in immediate risk of physical harm.[6]

---

[5] "The term 'negligent infliction of emotional distress' is largely self-explanatory, but a definitional point should be clarified at the outset. The injury we contemplate when considering negligent infliction of emotional distress is mental or emotional injury apart from the tort law concepts of pain and suffering. Although pain and suffering technically are mental harms, these terms traditionally have been used to describe sensations stemming directly from a physical injury or condition. The injury we deal with here is mental or emotional harm (such as fright or anxiety) that is caused by the negligence of another and that is not directly brought about by a physical injury, but that may manifest itself in physical symptoms." *Gottshall*, 512 U.S. at 544.

[6] The starting point of analyzing that claim must be through the prism of the beneficent purpose of and the relaxed standard of causation used to evaluate claims under FELA. Under FELA, "the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence *played any part, even the slightest*, in producing the injury or death for which damages are sought." *Rogers v. Missouri Pac. R. Co.*, 352 U.S. 500, 506 (1957) (emphasis added).

7

Amtrak argues that such a finding is impossible. First, according to Amtrak, "there is no nexus between whatever 'immediate risk of physical harm' [that Lee] claims he felt and Amtrak's alleged negligence." Def. Second Memo at 12-13. Because Lee suffered his injuries not during the crash but during his subsequent investigation of the crash site, Amtrak argues that "there is no link between Amtrak's alleged negligence and Lee's alleged emotional injuries." Def. Second Memo at 12.

This argument is not persuasive. Lee testified at his deposition that the duties associated with his position specifically required him to investigate the site. *See* Lee Depo. at 178-79. Lee traveled to the crash site solely and directly as a result of the collision between the Nissan and the train that served as Lee's workplace. A sufficient nexus between Amtrak's actions and Lee's presence at the crash site exists to support Lee's claim.

Second, and more compellingly, Amtrak contends that Lee cannot satisfy the "zone of danger" test simply because he was a bystander to catastrophe. Amtrak argues that even if Lee sustained legitimate emotional injuries, they occurred only after the crash, and "[b]ecause Lee was safely inside the crew car of the train at all times during the accident, he did not suffer an impact or an objective imminent threat of an impact during the accident under the zone of danger test." Def. Memo at 14.

In support of its position, Amtrak relies on a handful of post-*Gottshall* decisions that, in Amtrak's view, stand for the proposition that FELA creates a cause of action for emotional injuries sustained during a crash only when the plaintiff finds himself in peril of physical harm during that crash. As Amtrak correctly avers, the Third Circuit held in *Bloom v. Consolidated Railroad Corporation*, 41 F.3d 911 (3rd Cir. 1994), that a locomotive engineer who watched a

pedestrian commit suicide by standing in front of the oncoming train could not recover for emotional distress under FELA. The plaintiff in *Bloom* was never within the zone of danger, the Third Circuit held, "because at all times he safely rode in the locomotive's cab." *Id.* at 917.

Similarly, in *Lukowski v. CSX Transportation, Inc.*, 416 F.3d 478 (6th Cir. 2005), the Court held that plaintiffs could not pursue relief under FELA for emotional distress suffered during a crash-site investigation, during which they viewed a dead body. That court held that "in order to recover damages for emotional distress under FELA, the plaintiff must demonstrate that his or her emotional injury results from a fear for his or her own physical safety." *Id.* at 484. Because the *Lukowski* plaintiffs never "alleged or demonstrated that their emotional injuries were caused by anything other than seeing [the] body after the accident," *id.*, the Sixth Circuit affirmed the district court's judgment in favor of the employer.

Amtrak argues that Lee's claim is, in substance, no different from those at issue in *Bloom* and *Lukowski*. Amtrak highlights the fact that "Lee rode safely in the crew car throughout the duration of the accident," Def. Second Memo at 14, and contends therefore that Lee never found himself "placed in immediate risk of physical harm . . . ." *Gottshall*, 512 U.S. at 548.

But this suggestion too is unavailing. If Lee, like the plaintiffs in *Lukowski*, never had "alleged . . . that [his] emotional injuries were caused by anything other than seeing [a] body after the accident," *Lukowski*, 416 U.S. at 484, then Amtrak might be entitled to summary judgment. But that is not the extent of Lee's claim.[7] Lee contends centrally that, as he

_____

[7] Amtrak suggests that Lee has offered evidence regarding his fear of death "[p]erhaps realizing [he] clearly cannot recover for any alleged emotional distress suffered . . . [by] viewing dead bodies at the scene . . . ." Def. Second Memo at 14-15. Amtrak further describes "[t]his new declaration" as "curious." Def. Second Memo at 15. Clearly, Amtrak is skeptical of Lee's account, but summary judgment can never rest on skepticism. If doubt is yet to deny Lee's claim,

approached  the wrecked Nissan, surrounded by smoke, downed power lines, and the smell of

petroleum fumes, he became overwhelmed with the fear that his final moments were upon him.

Because Lee's duties as an Amtrak conductor required him to return to the crash site, that arena

was his workplace. And because the evidence shows that Lee was "placed in immediate risk of

physical harm" by Amtrak's conduct, *Gottshall*, 512 U.S. at 548, and thereby suffered "an

emotional injury caused by fear of physical injury to himself," *id.* at 556, he is entitled to

proceed to trial.[8]

    The argument offered by Illinois Central and BFI[9] is similar in substance, but because the

claim against which they defend takes its root in state law, the relevant body of law is different.

    Illinois Central and BFI argue that, under state law, Lee's claim for negligence-induced

emotional injury is governed by the Mississippi Supreme Court's decision in *Entex, Inc. v.*

*McGuire*, 414 So. 2d 437 (Miss. 1982). In *Entex*, a husband and wife were injured at their home

when a gas leak exploded and destroyed their house with the wife still inside. The husband raced

into what remained of the structure, which by that point was in flames, and "literally pulled his

wife from the burning home . . . when practically one side of the house had been blown away."

---

then that end must be wrought upon it by a jury.

    [8] Again, through the remedial lens of FELA, the question to ask is whether "such
negligence play[ed] any part, even the slightest, in bringing about an injury to the plaintiff."
*Norfolk Southern Ry. Co. v. Sorrell*, 549 U.S. 158, 163 (2007).

    [9] BFI also argues that causation does not connect its acts to Lee's injuries. Specifically,
BFI contends that it could not have anticipated that its actions would cause Lee to approach the
wreckage, that such a scene would cause emotional distress, or that Lee would choose this
specific crash scene to make an investigation. Def. First Memo at 64. Distilled to its simplest
form, though, BFI's argument is that, as a matter of law, its negligent acts could not have
resulted in emotional distress. Notably, BFI offers no authority for this position, and this Court
likewise is unaware of any.

*Id.* at 444 n.3. A second explosion followed moments later. Afterward, the couple filed suit for negligence with the husband seeking compensation for, among other things, emotional damages.

In evaluating that claim, the Court recalled Mississippi's earlier abandonment of the "impact doctrine," *see First National Bank v. Langley*, 314 So. 2d 324 (Miss. 1975), and reiterated its adherence to the principle that "genuine cases of injury growing out of the negligent acts of another – which are reasonably foreseeable as in other negligent cases – will not be dismissed simply because there was no trauma nor impact on the body of the injured claimant." *Entex*, 414 So. 2d at 444 (quoting *Langley*, 314 So. 2d at 339). The *Entex* Court then approvingly quoted the California Supreme Court and held that

> [i]n determining . . . whether defendant should reasonably foresee the injury to plaintiff, or, . . . whether defendant owes plaintiff a duty of care, the courts will take into account such factors as the following: (1) Whether plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it. (2) Whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence. (3) Whether plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship.

*Entex*, 414 So. 2d at 444 (quoting approvingly *Dillon v. Legg*, 68 Cal. 2d 728, 740-41, 441 P.2d 912 (1968)).

The facts of the case satisfied the *Entex* Court that "the issue of damages sustained by [the husband] was properly submitted to the jury . . . ." *Entex*, 414 So. 2d at 444.

When it decided *Entex*, the Mississippi Supreme Court explicitly took the view that the three delineated questions were only "factors" to be "take[n] into account," rather than prongs of a test that all must be satisfied. *Id.* Subsequent decisions, however, have taken the latter view. In 1991, the Mississippi Supreme Court recalled that *Entex* "set out the criteria which one must

meet on a claim of emotional trauma by a bystander." *O'Cain v. Harvey Freeman & Sons, Inc.*, 603 So. 2d 824, 829 (Miss. 1991). In *Satchfield v. R.R. Morrison & Sons, Inc.*, 872 So. 2d 661 (Miss. 2004), the plaintiff "argue[d] that the factors laid out in *Entex* are not mandatory elements of foreseeability, but rather only guidelines for that determination," *id.* at 664, but the majority nevertheless held that recent decisions "clearly reaffirmed the applicability of all the *Entex* factors . . . ." *Satchfield*, 872 So. 2d at 664. And by 2005, a federal district court observed that the *Entex* factors were, in truth, "[t]he criteria one must meet on a claim of emotional trauma by a bystander . . . ." *Bailey v. Lockheed Martin Corp.*, 432 F. Supp. 2d 665, 672 (S.D. Miss. 2005).

That test, in Illinois Central and BFI's views, simply is not satisfied by the facts of the case at bar. Illinois Central argues that "[f]irst, . . . Lee was not closely related to any of the individuals involved in the accident. . . . Second, Lee's alleged emotional injuries did not result 'from the sensory and contemporaneous observance of the accident' as required by *Entex*." Def. Second Memo at 9. Likewise, BFI contends that Lee "fails to meet even one of the[ ] [*Entex*] criteria, let alone all three." Def. First Mot. at 3.

Lee's response to the argument mirrors his rebuttal to Amtrak: that "Lee is not a bystander claiming emotional damages for witnessing the trauma to a third party; Lee is clearly claiming emotional damages sustained from the trauma *he experienced in his own right* . . . ." Pl. First Memo at 19. For that reason, Lee contends that his case is distinct from those addressed by the Mississippi Supreme Court in *Entex* and its progeny.

Resolution of this quarrel requires a deeper examination of the Mississippi Supreme Court's treatment of the issue. In *Satchfield*, 872 So. 2d 661, the plaintiff was in his car at a gas station when an explosion took place five feet away. The Court rejected his emotional-distress

claim for failure to satisfy the *Entex* factors, but only after noting that he specifically pled his case as a bystander. He later "submitted [an] affidavit wherein he allege[d] that . . . [he] was in immediate fear of imminent [*sic*] death or injury to [himself]," *id.* at 666, which is, of course, how Lee has pled his case. The *Satchfield* Court rejected that theory – not because the plaintiff remained nothing more than a bystander but because "his complaint makes no such allegations, nor does his appellate brief. [The plaintiff] alleges nothing more than a bystander claim for emotional distress. His entire claim is centered on his witnessing the horror experienced by the victims of the explosion." *Id.*

Lee's claims against Illinois Central and BFI are precisely the species of creature into which the *Satchfield* plaintiff attempted to mold his case. If both theories were invalid under *Entex*, then presumably, the Mississippi Supreme Court would have said so and saved itself the trouble of reviewing the pleadings. But because the *Satchfield* Court went to such lengths to explain why the plaintiff was not entitled to pursue the claim now offered by Lee, one can only presume that the theory would have offered a valid road to recovery if not for the procedural bar. Given that interpretation, one can only conclude that Mississippi law permits recovery under the theory now offered by Lee.

Illinois Central's reliance on a noteworthy federal-court decision does not shake this Court's confidence in that conclusion. In *Bailey v. Lockheed Martin Corp.*, 432 F. Supp. 2d 665 (S.D. Miss. 2005), a group of plaintiffs sued their employer for, *inter alia*, emotional injuries suffered during a co-worker's shooting rampage. Judge Lee granted summary judgment to the employer because, under Mississippi law, the exclusive remedy for unintentional injuries suffered at the workplace is the Mississippi Workers' Compensation Act. *Id.* at 667-68. But the

13

*Bailey* Court added that the plaintiffs' emotional-injury claims would not have been actionable even if the Act's exclusivity bar were no object because, "[a]lthough they assert otherwise, these plaintiffs are suing for injuries as 'bystanders.'" *Id.* at 672. Judge Lee reasoned that, in contrast to one who sues for injuries inflicted in his own right, the *Bailey* plaintiffs "[we]re suing because they witnessed this traumatic event, and not because they were themselves violated in any way, other than being in proximity to harm." *Id.* (citing *O'Cain v. Harvey Freeman & Sons., Inc. of Mississippi*, 603 So. 2d 824 (Miss. 1991), and *Satchfield*, 872 So. 2d at 667).

For reasons into which this Court already has delved, the case at bar is an altogether different creature. Lee's claim does not rest on the allegation that he suffered emotional distress by viewing the physical injuries of others; if it did, then this Court would not hesitate to grant the defendants' motions. Instead, Lee contends that the defendants' negligent acts led to injuries of his own. Like the plaintiff in *O'Cain*, whose claim for emotional distress the Mississippi Supreme Court permitted to proceed to trial, Lee's case is not "based on the actual witnessing of the event;" rather, his injuries stem from his placement in a dangerous environment by the defendants' negligent actions. *O'Cain*, 603 So. 2d at 830. Such a claim, supported as Lee's is by evidence sufficient to create a genuine issue of material fact, survives the defendants' motions for summary judgment.

Moreover, viewing the facts as the Court must in the light most favorable to Lee, one cannot foreclose the suggestion that Lee's emotional injury began even before he stepped off the train. In his Complaint, Lee alleges that Illinois Central negligently maintained the rail crossing in question, thereby "causing [him] to sustain severe, permanent and disabling mental and emotional injuries[.]" Complaint at 6. Likewise, Lee's Amended Complaint [Docket No. 12]

claims that BFI acted negligently by situating a waste container in the view of crossing automobiles, thereby "caus[ing] . . . Lee to sustain severe, permanent and disabling mental and emotional injuries[.]" Am. Complaint at 3. The terms of Lee's claims, therefore, do not explicitly limit the cause of action to the events surrounding the smoldering crash site, and the evidence submitted heretofore could support a jury's conclusion that Lee sustained emotional injuries that began at the time of the crash itself. *See* Lee Depo. at 170 ("when I heard the emergency brakes going to emergency, then I knew – I knew something was – could be happening[;]" "could hear the glass flying[;]" "knew it was bad").

To put it another way, if Lee never had seen the children's bodies but all other evidence in the case remained, he still would have proven his claims with sufficient persuasion to proceed to trial.

And under the facts as Lee presents them, he has demonstrated such an entitlement. Therefore, BFI's Motion for Summary Judgment [Docket No. 63] is denied, and the Motion for Summary Judgment [Docket No. 65] of Amtrak and Illinois Central likewise is denied.

SO ORDERED this Twenty-Sixth day of May 2011.


/s/ *Carlton W. Reeves*
Hon. Carlton W. Reeves
United States District Court Judge