IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

**RORY THOMAS LEE**                                                                                          **PLAINTIFF**

**V.**                                                               **CAUSE NO. 3:10-CV-00392-CWR-LRA**

**THE NATIONAL RAILROAD PASSENGER**
**CORPORATION (AMTRAK), ILLINOIS**
**CENTRAL RAILROAD COMPANY, AND**                                             **DEFENDANTS**
**BFI WASTE SERVICES, LLC**

### ORDER GRANTING SUMMARY JUDGMENT TO BFI WASTE SERVICES, LLC

The above-styled matter is before the Court on the summary-judgment motion[1] of BFI Waste Services, LLC. The Court has considered arguments presented both in the parties' briefs and at a pretrial conference on December 12, 2011, and, after due deliberation, has concluded that the motion must be granted.

A more detailed recitation of this case's underlying facts is contained within a previous Order denying summary judgment to the dispute's other defendants,[2] but for the purposes of the motion at hand, it is enough to say that on October 19, 2009, a collision occurred at the Nehi Circle crossing in McComb, Mississippi, between a 2002 Nissan Altima carrying four passengers and an Amtrak train carrying Rory Thomas Lee (hereinafter "Lee"), who was aboard in his capacity as an Amtrak employee.

---

[1] Defendant, BFI Waste Services, LLC's Motion to Dismiss, or in the Alternative for Summary Judgment [Docket No. 158].

[2] Order Denying Motion for Summary Judgment [Docket No. 210] at 1-4.

Lee initiated this suit on July 12, 2010, with a Complaint[3] that did not name BFI Waste Services, LCC (hereinafter "BFI").[4] Eventually, though, Lee filed an Amended Complaint[5] in which he alleged that BFI's negligence caused the crash that led to his injuries. Specifically, Lee claimed that a BFI commercial waste collection container at the Nehi Circle crossing blocked the Nissan driver's view, thereby causing the crash and constituting negligence.[6]

Discovery ensued but did not yield any fact witnesses, such as other drivers, who were present at the Nehi Circle crossing on the day of the crash, who could testify that the waste container obstructed the view of an oncoming train.[7] Likewise, the plaintiff did not submit the testimony or opinion of an expert witness, such as that of an accident reconstructionist, who could provide such testimony. However, Lee did present deposition testimony from Bobby Perkins and Angela Perkins, the parents of the driver, who saw the container in the days

---

[3] Title 28, Section 1367(a) of the United States Code provides that, in most cases, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties." Lee's FELA claim against Amtrak arises under federal law, and therefore, original jurisdiction over that matter lies in the district court. 28 U.S.C. § 1331. Lee's claim against BFI arises from the same case or controversy as that underlying his FELA claim. Therefore, under Section 1367(a), this Court enjoys jurisdiction over the entire dispute.

[4] Complaint [Docket No. 1].

[5] Amended Complaint [Docket No. 12].

[6] Amended Complaint at 2-3.

[7] Tragically, the driver, a minor child, was killed in the accident.

following the crash.[8] According to Bobby Perkins, he inspected the Nehi Circle scene on the day after the crash, and in his view, the dumpster appeared to have been moved; Bobby Perkins said that "around the bottom" of the dumpster appeared "fresh dirt," and that the marks near the container indicated that it had been moved away from the tracks.[9]

Similarly, Angela Perkins testified that she and her husband visited the Nehi Circle crossing "a while later, I don't know how many months or what," and that "you could tell [the dumpster] had been moved because it wasn't sitting in that spot. You could tell it had been dragged"[10] because "[i]t had marks on the ground."[11]

On October 14, BFI moved for summary judgment. Among other things, BFI argued that Lee had not shown the existence of a genuine issue of material fact as to whether BFI caused the crash that led to his injuries.

## STANDARD OF REVIEW

Although motions for summary judgment are filed frequently, not every case is suitable for such disposition. Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[12] The moving party must support that contention by "citing to particular parts of materials

---

[8] Plaintiff's Memorandum in Opposition to Defendant, BFI Waste Services, LLC's Motion for Summary Judgment [Docket No. 180] (hereinafter "Plaintiff's Memo") at 10-13.

[9] Exhibit C to Plaintiff's Memo at 46-47.

[10] Exhibit D to Plaintiff's Memo at 121.

[11] Exhibit D to Plaintiff's Memo at 122.

[12] Fed. R. Civ. P. 56(a).

in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials,"[13] and the Court must view that evidence in the light most favorable to the non-moving party.[14]

When confronted with these motions, this Court focuses on "genuine" issues of "material" facts. An issue is genuine "if the evidence supporting its resolution in favor of the party opposing summary judgment, together with any inference in such party's favor that the evidence allows, would be sufficient to support a verdict in favor of the party."[15] A fact is material if it is one that might affect the outcome of the suit under the governing law.[16]

When filing a motion for summary judgment, "the moving party is not required to negate the elements of the nonmoving party's case."[17] Moreover, the movant "need not prove a negative when it moves for summary judgment on an issue that the [respondent] must prove at trial. It need only point to an absence of proof on [the non-movant's] part."[18]

Once the movant demonstrates that it is entitled to judgment as a matter of law, the burden shifts to the resisting party to provide reasons that summary judgment is not proper.[19] As

---

[13] Fed. R. Civ. P. 56(c)

[14] *Abarca v. Metro Transit Auth.*, 404 F.3d 938, 940 (5th Cir. 2005).

[15] *Zisman v. Mason*, 2008 WL 879726, *3 (S.D. Miss. 2008) (citing *Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987).

[16] *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

[17] *Lawrence v. Univ. of Texas Medical Branch at Galveston*, 163 F.3d 309, 311 (5th Cir. 1999).

[18] *Celotex v. Catrett*, 477 U.S. 317, 324 (1986).

[19] *Id*.

the Court once explained:

> The non-movant is then obligated to present competent evidence setting forth *specific* facts to illustrate the existence of a genuine issue of material fact for trial. . . . The resisting party may not create a genuine dispute simply by alleging that a dispute exists . . . . When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth *specific* facts showing that there is a genuine issue for trial.[20]

Additionally, the Court "resolves factual controversies for purposes of summary judgment in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."[21] Where there is no proof of contradictory facts, the Court will not assume that the nonmoving party could or would prove the necessary facts.

This Court is ever mindful that although a useful device, summary judgment "must be employed cautiously because it is a final adjudication on the merits."[22] The jury has the responsibility to assess the probative value of the evidence. As a consequence, a court must step back and not make any credibility determinations, and it must not weigh evidence or draw from the facts legitimate inferences for the movant.[23]

---

[20] *Walker v. J.E. Merit Constructors, Inc.*, 707 F. Supp. 254, 257 (S.D. Miss 1988) (citations and quotations omitted) (emphasis added).

[21] *Zisman v. Mason*, 2008 WL 879726, *3 (S.D. Miss. 2008) (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).

[22] *Jackson v. Cain*, 864 F.2d 1235, 1241 (5th Cir. 1989); *Hulsey v. State of Texas*, 929 F.2d 168, 170 (5th Cir. 1991).

[23] *Strong v. Dept. of Army*, 414 F. Supp. 2d 625, 628 (S.D. Miss. 2005).

**ANALYSIS**

It is hornbook law that the plaintiff in a negligence suit must prove duty, breach thereof, causation, and damage.[24] To establish the element of cause, a plaintiff "may not rest on surmise, conjecture, or speculation."[25] In other words, "the proof or circumstances shown must be such that they will take the case out of the realm of conjecture and place it within the field of a legitimate inference of liability."[26]

In the case at bar, the testimony of Bobby Perkins and Angela Perkins provides the only evidentiary basis for suggesting that the waste container in question obstructed the view of the Nissan Altima's driver. Viewed in the light most favorable to Lee, the evidence supports a conclusion that, by the time Bobby Perkins observed the dumpster on the day following the crash, it had been moved away from the crossing, which would suggest that the dumpster previously had been located closer to the tracks in such a manner that it could obstruct the view of a driver approaching the crossing.

But this evidence is not sufficient to establish causation. Even viewed in the light most favorable to Lee's case, Bobby Perkins' testimony proves only that, at some point prior to his arrival at the Nehi Circle crossing on the day following the crash, the dumpster had been dragged in a direction leading away from the tracks. That evidence does not suggest whether the dumpster was dragged five minutes before Bobby Perkins arrived, five hours beforehand, or five weeks

---

[24] *Couch v. City of D'Iberville*, 656 So. 2d 146, 150 (Miss. 1995). The negligence claim must be adjudicated under the substantive law of the State of Mississippi. *Erie R.R. Co. v. Tompkins*, 304 U.S. 604, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

[25] *Maness v. Illinois Cent. R. Co.*, 271 So. 2d 418, 422 (Miss. 1972).

[26] *Id.*

beforehand.²⁷ Even if jurors believed Bobby Perkins' account in its entirety, they still would be left merely to speculate as to *when* the dumpster was dragged.

Recently, this Court addressed a similar matter in an opinion that is instructive on this point. In *Castilla v. Marriott International, Inc.*,²⁸ the plaintiff suffered injuries after slipping on a patch of liquid at the entrance to a hotel's restaurant. The fall occurred at approximately 5:18 p.m., and the plaintiff adduced evidence showing that the restaurant staff cleaned its entrance twice each day at roughly 2 p.m. and 9 p.m.²⁹ Castilla sued for premises liability and sought to rely on the inference that the dangerous condition could have existed for more than three hours. Pursuant to longstanding Mississippi law, though, this Court rejected that argument because the evidence no more supported that inference than it did an inference that the liquid had been on the floor for only two or three minutes.³⁰

This is not to say that the Court views the testimony of Bobby Perkins and Angela Perkins as totally unpersuasive; in fact, the opposite is true. Any court reviewing a motion for summary judgment is obligated to view evidence favoring the non-movant. If a question of

---

²⁷ Moreover, Perkins' testimony does not establish that his view of the container was from the same or a similar angle or under circumstances similar to those under which his daughter would have seen the dumpster. If Perkins' testimony had established that the dumpster previously had been situated in a location that could have resulted in an obstructed view for the Nissan driver, then whatever differences existed between Perkins' view and that of the driver (e.g., Perkins' idleness contrasted against the driver's rapid approach toward the crossing) might merely be a factor for jurors to consider when assigning weight to the evidence. But the record reveals no such evidence.

²⁸ *Castilla v. Marriott Int'l, Inc.*, 2011 WL 4832930 (S.D. Miss. Oct. 12, 2011) (Reeves, J.).

²⁹ *Id.* at *1.

³⁰ *Id.* at *3.

beforehand.²⁷ Even if jurors believed Bobby Perkins' account in its entirety, they still would be left merely to speculate as to *when* the dumpster was dragged.

Recently, this Court addressed a similar matter in an opinion that is instructive on this point. In *Castilla v. Marriott International, Inc.*,²⁸ the plaintiff suffered injuries after slipping on a patch of liquid at the entrance to a hotel's restaurant. The fall occurred at approximately 5:18 p.m., and the plaintiff adduced evidence showing that the restaurant staff cleaned its entrance twice each day at roughly 2 p.m. and 9 p.m.²⁹ Castilla sued for premises liability and sought to rely on the inference that the dangerous condition could have existed for more than three hours. Pursuant to longstanding Mississippi law, though, this Court rejected that argument because the evidence no more supported that inference than it did an inference that the liquid had been on the floor for only two or three minutes.³⁰

This is not to say that the Court views the testimony of Bobby Perkins and Angela Perkins as totally unpersuasive; in fact, the opposite is true. Any court reviewing a motion for summary judgment is obligated to view evidence favoring the non-movant. If a question of

---

²⁷ Moreover, Perkins' testimony does not establish that his view of the container was from the same or a similar angle or under circumstances similar to those under which his daughter would have seen the dumpster. If Perkins' testimony had established that the dumpster previously had been situated in a location that could have resulted in an obstructed view for the Nissan driver, then whatever differences existed between Perkins' view and that of the driver (e.g., Perkins' idleness contrasted against the driver's rapid approach toward the crossing) might merely be a factor for jurors to consider when assigning weight to the evidence. But the record reveals no such evidence.

²⁸ *Castilla v. Marriott Int'l, Inc.*, 2011 WL 4832930 (S.D. Miss. Oct. 12, 2011) (Reeves, J.).

²⁹ *Id.* at *1.

³⁰ *Id.* at *3.

material facts exists as to which is more reliable between two witnesses' differing accounts of the same event, then that is a dispute that must be submitted to a jury. Indeed, even if BFI adduced favorable testimony from 100 witnesses and Lee offered only a sliver of material evidence supporting his claim, then this Court would be bound to view that evidence in the light most favorable to the plaintiff and to deny a motion for summary judgment.[31]

But that is not the situation herein presented. In this case, even if a fact-finder were to believe every word of the accounts offered by Angela Perkins and Bobby Perkins, no evidence would exist to support the conclusion that the dumpster was moved after the crash rather than before; the determination necessarily would rest on speculation, and the law does not permit such a finding.

Therefore, lacking any evidence that BFI caused the crash that led to Lee's injuries, no genuine issue of material fact exists as to whether BFI acted negligently toward Lee. BFI's motion for summary judgment is granted.

SO ORDERED this Twenty-Seventh day of December 2011.

/s/ *Carlton W. Reeves*
Hon. Carlton W. Reeves
United States District Court Judge

---

[31] The tasks of weighing the evidence and of evaluating the credibility of witnesses belong to the jury. *Vaughn v. Woodforest Bank*, ___ F.3d ___, 2011 WL 6382033, *6 (5th Cir. Dec. 21, 2011); *Johnson v. Diversicare Afton Oaks, LLC*, 597 F.3d 673, 676 (5th Cir. Cir. 2010).