IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

**RORY THOMAS LEE**                                                                                   **PLAINTIFF**

**V.**                              **CAUSE NO. 3:10-CV-00392-CWR-LRA**

**THE NATIONAL RAILROAD PASSENGER
CORPORATION (AMTRAK) AND ILLINOIS**                        **DEFENDANTS**
**CENTRAL RAILROAD COMPANY**

## ORDER

The above-styled matter is before the Court on the defendants' motion *in limine*,[1] which presents 17 separate issues which, in the minds of the National Railroad Passenger Corporation (hereinafter "Amtrak") and Illinois Central Railroad Company (hereinafter "Illinois Central"), should be declared inadmissible at trial. The Court has considered the arguments in support of the defendants' positions, along with the rebuttals offered by plaintiff Rory Thomas Lee (hereinafter "Lee"), and has concluded that the motion should be granted in part and denied in part.

Quoting from the defendants' motion itself, the subjects to which the defendants object are:

    1. Excessive train speed
    2. Inadequate, insufficient, and/or defective warnings devices
    3. Post accident closure of the crossing
    4. FRA reports concerning accidents at Nehi Circle crossing
    5. Prior incident and/or accidents at the Nehi Circle crossing
    6. Other incidents involving Amtrak and Illinois Central employees other than plaintiff
    7. Prior disciplinary action of Amtrak and Illinois Central employees other than plaintiff
    8. Lawsuits/complaints filed by others arising from the accident

---

[1] Motion in Limine by Amtrak and Illinois Central (hereinafter "Motion") [Docket No. 196].

     9. Size and financial condition of Amtrak and Illinois Central
     10. Relative wealth of parties
     11. That jurors act as safety advocates in this lawsuit or that they send a message to Amtrak and/or Illinois Central with their verdict
     12. Size of the law firm representing Amtrak and Illinois Central
     13. Golden rule arguments
     14. Profits over people
     15. Any reference to Illinois Central as Canadian National Railway
     16. Plaintiff's alleged injuries from taking Seroquel
     17. Recordings of conversations between Amtrak crew dispatcher

     The plaintiff explicitly declines to oppose Nos. 6, 7, and 9-15. Therefore, with respect to these items, the motion is granted in part.

     **Excessive Train Speed.** The Court has held previously that the issue of the train's speed is precluded and pre-empted by federal law.[2] This portion of the motion is **granted**.

     **Inadequate Warning Devices.** The defendants' sole argument for limiting such testimony is defendants' contention that the testimony is precluded and pre-empted by federal law, but the Court has held that is not.[3] Therefore, evidence on the subject is not irrelevant and is admissible. This portion of the motion is **denied**.

     **Post-Accident Closure of the Crossing.** The defendants contend that the post-crash closing of the Nehi Circle crossing amounted to a subsequent remedial measure and that evidence thereof is inadmissible under Rule 407 of the Federal Rules of Evidence.[4] Additionally, the defendants argue that the probative value of such evidence is outweighed by the danger of

---

[2] Order Denying Motion for Summary Judgment [Docket No. 210] at 5-7.

[3] Order Denying Motion for Summary Judgment at 7-12.

[4] "When measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove . . . negligence[.] But the court may admit this evidence for another purpose, such as impeachment or – if disputed – proving ownership, control, or the feasibility of precautionary measures." Fed. R. Evid. 407.

unfair prejudice, particularly in light of their contention that the crossing was closed not at Illinois Central's behest but at that of the Mississippi Department of Transportation.[5]

In response, Lee contends he will introduce the evidence to show "feasibility of precautionary measures." Specifically, Lee plans to adduce the testimony of William Hughes, an expert who will testify that closure of the crossing was a viable option even before the crash.[6]

This portion of the defendants' motion is **held in abeyance** until such a time as the Court can make an informed decision based on the development of the case and the circumstances under which the evidence is offered.

**FRA Reports Concerning Accidents at Nehi Circle.** According to the defendants, Lee intends to introduce eight Federal Railroad Administration reports related to incidents occurring at the Nehi Circle crossing between 1981-2008. None of the reports concerns the October 2009 crash at the nucleus of this case.

The defendants argue that federal regulations prohibit Lee from using the reports. Specifically, the defendants rely on Title 49, Section 20903 of the United States Code, which establishes that FRA reports cannot be "used in a civil action for damages resulting from a matter mentioned in the report." But Lee correctly points out that Section 20903 only prohibits use of an FRA report in a case "resulting from a matter mentioned in the report," and because all of the reports were drafted prior to the October 2009 crash, Section 20903 is irrelevant.

---

[5] Exhibit A to Motion. The exhibit is a letter from Robert A. Burt II, director of the Freight, Rails, Ports and Waterways Division of MDOT, regarding the Commission's "vote[ ] to approve the permanent closure and abolishment of the Liberty White/Nehi Circle crossing . . . of the Illinois Central Railroad in the City of McComb . . . ."

[6] Response in Opposition to Defendants' Motions in Limine [Docket No. 205] (hereinafter "Lee's Memo") at 2-3.

In response, the defendants offer a regulation that, they claim, commands that FRA reports "may not be admitted as evidence or used for any purpose in *any* action for damages."[7]

But even the most passing review of that regulation demonstrates that the defendants' argument takes root in an incomplete reading of that regulation. Title 49, Section 225.7(b) of the Code of Federal Regulations does indeed recount Section 20903's prohibition against an FRA report's "use[ ] for any purpose in any action for damages," but that sentence continues: ". . . GROWING OUT OF ANY MATTERS MENTIONED IN THOSE REPORTS." (emphasis added). The regulation does little more than restate Section 20903's purpose, and it certainly does not stand for the proposition for which the defendants offer it. The Court assumes that this was an oversight and that no warning to the parties is needed.

This portion of the defendants' motion is **denied**.

**Prior incidents/accidents.** The defendants argue that any evidence of prior accidents, incidents or near-misses at the Nehi Circle crossing is irrelevant to the case at hand and should be declared inadmissible. In support of their position, the defendants rely on the Fifth Circuit's decision in *Baker v. Canadian National/Illinois Central Railway Co.*,[8] in which that Court held that the degree of similarity between the crash at issue and the previous crashes is a factor to consider in determining whether evidence of other incidents is relevant. The defendants contend that "no prior accident at Nehi Circle occurred under substantially similar circumstances and/or are too remote in time," and therefore that these matters are not similar enough to the October 2009 crash to warrant admission.

---

[7] Defendants' Memo at 5 (quoting 49 C.F.R. § 225.7(b)).

[8] *Baker v. Canadian Nat'l/Illinois Cent. Ry. Co.*, 536 F.3d 357 (5th Cir. 2008).

In response, Lee cites the Fifth Circuit's decision in *Johnson v. Ford Motor Co.*,[9] in which that Court held that prior-crash evidence must enjoy similarity to the crash at issue only "[w]hen evidence of other accidents or occurrences is offered for any purpose *other than to show notice* . . . ."[10] Lee represents that one of his experts may testify that prior incidents are a matter typically considered when determining whether a rail crossing should feature active warning devices.[11]

Therefore, to the extent that Lee plans to admit this evidence to demonstrate notice on the part of one or both of the defendants, the evidence is admissible, and this portion of the motion *in limine* is **denied**. To the extent that Lee hopes to use this evidence for any other purpose, though, the Court **holds the matter in abeyance** until such a time as it has enjoyed an opportunity to evaluate the similarities between the crash at hand and any prior, potentially relevant incident.

**Other lawsuits/complaints stemming from the October 2009 crash.** The defendants argue that any mention of other lawsuits focusing on the October 2009 crash, including but not limited to *Angela Perkins v. National Railroad Passenger Corp.*,[12] and *Linda Marie Earl v. National Railroad Passenger Corp.*,[13] should be forbidden as irrelevant. If relevant, the defendants contend that the probative value of such evidence would be outweighed by the risk of unfair prejudice.

---

[9] *Johnson v. Ford Motor Co.*, 988 F.2d 573 (5th Cir. 1993).

[10] *Id.* at 579 (emphasis added).

[11] Lee's Memo at 3-4.

[12] *Angela Perkins v. Nat'l R.R. Passenger Corp.*, No. 3:10-cv-00242-HTW-LRA.

[13] *Linda Marie Earl v. Nat'l R.R. Passenger Corp.*, No. 3:10-cv-00584-DPJ-FKB.

The only statement offered by Lee on this point is this: "Plaintiff adopts his response his [*sic*] opposition to BFI's Motion in Limine #1."[14] A review of this matter's docket sheet reveals that BFI Waste Services, LLC, formerly a defendant in this action, filed a collection of motions *in limine*[15] on November 28, 2011. But Lee's only filing relevant to that motion appears to be a motion to strike,[16] which the Court denied by Text Order on December 2, 2011. In other words, Lee never filed a direct response to BFI's motions *in limine*, and therefore, there is no such rebuttal for Lee to incorporate into his opposition to the remaining defendants' motion. Having failed to offer argument on this non-dispositive point, the Court considers the point conceded.[17]

Evidence of other civil actions and complaints stemming from the October 2009 crash is excluded from trial, and this portion of the motion is **granted**. However, to the extent that such evidence might be admissible on other grounds – for example, to impeach a witness – then that is a matter that the Court will address at trial and explicitly declines to address herein.

**Injuries from Taking Seroquel.** The defendants argue that any evidence Lee suffered injuries from taking Seroquel should be deemed inadmissible. Their strongest argument is that a doctor's off-label prescription of Seroquel, occurring six months after the accident and resulting in side effects experienced by a small minority of patients, is a result so far removed from the defendants' purportedly negligent conduct that it could not have been foreseen reasonably.

---

[14] Lee Memo at 5.

[15] BFI Waste Services, LLC's Motion *in Limine* [Docket No. 199].

[16] Plaintiff's Motion to Strike Defendants' Motions *in Limine* [Docket No. 203].

[17] *See* L.U. Civ. R. 7(b)(3)(E).

Lee refers the Court[18] to arguments made in response to a *Daubert* motion offered by the defendants against a witness prepared to testify about Seroquel's side effects,[19] but that filing focuses solely on Lee's position that the testimony was appropriate under Rule 702 of the Federal Rules of Evidence. The memo cited by Lee contains no discussion of whether any injuries suffered as a result of Lee's Seroquel use were reasonably foreseeable by the defendants. As with the issue of previous lawsuits, Lee has offered no authority in support of his opposition to this portion of the defendants' motion.

Therefore, evidence regarding Lee's use of Seroquel is excluded, and this portion of the motion *in limine* is **granted.**

**Recordings of Conversations Between Amtrak Dispatchers.** Finally, the defendants move the Court to exclude any reference to recordings of conversations between Lee and an Amtrak crew dispatcher named Tonya. According to the defendants, they have no such material in their possession, but they anticipate that Lee will discuss the matter at trial in an "attempt to suggest . . . that defendants improperly disposed of any such recordings."[20] In response, Lee asks the Court to defer its ruling on this portion of the motion until trial.

The Court's ruling on this portion of the motion is **held in abeyance**.

## CONCLUSION

For the sake of clarity, the 17 issues addressed by the defendants' motion *in limine* are

---

[18] Lee Memo at 5-6.

[19] Plaintiff's Memorandum in Opposition to Defendant, BFI's, *Daubert* Motion to Exclude the Testimony of Michael Becker, M.D. [Docket No. 181].

[20] Defendants' Memo at 12.

disposed of in the following manners:

    1. Excessive train speed: **GRANTED**
    2. Inadequate, insufficient, and/or defective warnings devices: **DENIED**
    3. Post-accident closure of the crossing: **HOLD IN ABEYANCE**
    4. FRA reports concerning accidents at Nehi Circle crossing: **DENIED**
    5. Prior incident and/or accidents at the Nehi Circle crossing: **DENIED AS TO NOTICE, HOLD IN ABEYANCE AS TO OTHER USES**
    6. Other incidents involving Amtrak and Illinois Central employees other than plaintiff: **GRANTED BY CONCESSION**
    7. Prior disciplinary action of Amtrak and Illinois Central employees other than plaintiff: **GRANTED BY CONCESSION**
    8. Lawsuits/complaints filed by others arising from the accident: **GRANTED**
    9. Size and financial condition of Amtrak and Illinois Central: **GRANTED BY CONCESSION**
    10. Relative wealth of parties: **GRANTED BY CONCESSION**
    11. That jurors act as safety advocates in this lawsuit or that they send a message to Amtrak and/or Illinois Central with their verdict: **GRANTED BY CONCESSION**
    12. Size of the law firm representing Amtrak and Illinois Central: **GRANTED BY CONCESSION**
    13. Golden rule arguments: **GRANTED BY CONCESSION**
    14. Profits over people: **GRANTED BY CONCESSION**
    15. Any reference to Illinois Central as Canadian National Railway: **GRANTED BY CONCESSION**
    16. Plaintiff's alleged injuries from taking Seroquel: **GRANTED**
    17. Recordings of conversations between Amtrak crew dispatcher: **HELD IN ABEYANCE**

SO ORDERED this Seventeenth day of January 2012.

                                                /s/ *Carlton W. Reeves*
                                                Hon. Carlton W. Reeves
                                                United States District Court Judge